```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

SWIRE OILFIELD SERVICES, LLC               CIVIL ACTION

VERSUS                                     NO: 15-971

GATOR RIGGING, INSPECTION,                 SECTION: R
TESTING, AND SUPPLY, LLC, ET AL.

**ORDER AND REASONS**

Plaintiff Swire Oilfield Services, LLC (Swire) moves the Court to remand this case.[1] For the following reasons, the Court grants the motion.

**I.   BACKGROUND**

Swire sued defendants Gator Rigging, Inspection, Testing and Supply, LLC (Gator); GRC Enterprises, Inc. d/b/a Taylor Chain Division (Taylor); and Apex Tool Group, LLC (Apex) on February 20, 2015, alleging various violations of Louisiana law. Swire filed its lawsuit in Louisiana's Thirty-Second Judicial District Court for the Parish of Terrebone.[2]

The parties do not dispute that Swire and Gator are nondiverse litigants for federal diversity jurisdiction purposes. Defendants argue, however, that Swire improperly joined Gator as a defendant because it has no arguable claim against Gator under Louisiana

---

[1]   R. Doc. 6.

[2]   *See* R. Doc. 1-5.

law.[3]  The facts surrounding the incidents giving rise to this dispute are as follows.

Swire supplies offshore "cargo carrying units" ("CCUs") and other related equipment to the energy industry.  CCUs are large, rectangular, metal containers used to store and transport products, equipment, and other items on vessels.  In addition to the CCUs, Swire's customers rent "slings" to lift and move the CCUs by crane when transporting them from one place to another.[4]  The slings are made of four wire ropes, tethered together to form a loop on each end.  To transport a CCU, the transporter will first connect the loops on one end of each of the four ropes to each of the CCU's four corners.  Then, the transporter will thread the other end of two pairs of ropes through two metal rings, called "subassembly links."  The transporter then connects the two subassembly links to a larger "master link," through which the crane will lift the CCU.[5]  The "sling" as a whole consists of the four ropes, the two subassembly links, and the master link.

Swire purchased slings from Gator.  Gator's slings contained links manufactured by Taylor and Apex.[6]  Swire alleges that on four separate occasions, Gator's slings broke while Swire's customers

---

[3]     R. Doc. 1 at 2.

[4]     R. Doc. 1-5 at 2 ¶¶ 7-8.

[5]     *Id.* ¶¶ 8-10.

[6]     *Id.* at 3-4 ¶¶ 12, 14, 16, 18.

used them to transport a CCU. Specifically, the slings' subassembly links or master link "parted and eventually snapped in two[.]"[7] Following the breaks, Swire stopped renting these Gator slings to its customers.[8] As a result of the breaks, Swire alleges that it incurred "substantial damages" including costs incurred purchasing replacement slings, lost revenue and profit, and loss of business reputation and good will.

In its petition, Swire alleges four causes of action against Gator, Taylor, and Apex: product liability under the Louisiana Products Liability Act and redhibition, negligence, and unjust enrichment under the Louisiana Civil Code.[9] Taylor and Apex timely removed the action on March 30, 2015 on the basis of diversity jurisdiction, alleging that Swire improperly joined Gator to defeat federal jurisdiction.[10] Swire filed a motion to remand on April 21, 2015, arguing that complete diversity does not exist because it asserted valid state-law causes of action against Gator. Taylor and Apex oppose the motion to remand, again on the ground of improper joinder.[11]

---

[7] *Id.* ¶¶ 11, 13, 15, 17.

[8] *Id.* at 4-5 ¶ 19.

[9] *Id.* at 5-8.

[10] R. Doc. 1.

[11] R. Doc. 9.

**II.   LEGAL STANDARD**

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a).  A defendant may not remove under section 1332, however, if a nondiverse party is properly joined as a defendant.

The burden of demonstrating improper joinder is a heavy one because the doctrine is a narrow exception to the rule of complete diversity.  *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  The party seeking removal may establish improper joinder by showing (1) actual fraud in pleading jurisdictional facts, or (2) the plaintiff's inability to establish a cause of action against the nondiverse defendant.  *See id.* at 222-23.  To find improper joinder because of the plaintiff's inability to state a claim against the nondiverse defendant, the Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant.  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  There must be a reasonable possibility of recovery, not merely a theoretical one.  *Id.* (internal citations omitted).

The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6). *Id.* The scope of the improper joinder inquiry is broader though, because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his claim. *Id.* at 462-63 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)). The Court must also consider all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of plaintiff. *Id.*

**III. DISCUSSION**

After reviewing the myriad of claims Swire set forth against Gator, the Court finds that Swire has presented at least one potentially viable claim under Louisiana law for redhibition. Redhibition is governed by Louisiana Civil Code article 2520, *et. seq.* The Civil Code binds sellers to an implied warranty that "the thing sold is free of hidden defects and is reasonably fit for the buyer's intended use." *Young v. Ford Motor Co., Inc.*, 595 So.2d 1123, 1126 (La. 1992) (citing *Rey v. Cuccia*, 298 So. 2d 840 (La. 1974)); *see also* La. Civ. Code art. 2520. To sustain a redhibition claim, the plaintiff must prove

> (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or . . . is so inconvenient [to use] that had [the buyer] known of the defect, he never would have purchased it;

5

> (2) the thing contained a non-apparent, or latent, defect at the time of the sale; and
>
> (3) the seller was given an opportunity to repair the defect.

*Walton Const. Co., L.L.C. v. G.M. Horne & Co., Inc.*, 984 So. 2d 827, 834 (La. App. 1 Cir. 2008).

The requirement that the buyer give the seller an opportunity to repair the defect, however, is not absolute. Louisiana Civil Code article 2522, titled "Notice of existence of defect," qualifies the notice and repair requirement. The Code provides, "[a] buyer who fails to give that notice suffers diminution of the warranty *to the extent* the seller can show that the defect could have been repaired or that the repairs would have been less burdensome, had he received timely notice." La. Civ. Code art. 2522 (emphasis added). Moreover, the Code provides for situations when a seller cannot repair or fails to repair the defective thing:

> A seller who did not know that the thing sold had a defect is only bound to repair, remedy, or correct the defect. *If he is unable or fails so to do*, he is then bound to return the price to the buyer with interest . . . and to reimburse him for the reasonable expenses occasioned by the sale . . . .

La. Civ. Code art. 2531 (emphasis added). As the Louisiana Civil Law Treatise explains,

> The buyer, however, may forgo the repair step, if the buyer is confident that the defect is one that cannot be remedied at all. In such a case, the buyer may choose not to give the seller notice of the defect. Such a buyer risks, of course, that a court will disagree with his assessment that the defect could not be fixed.

6

24 Dian Tooley-Knoblett & David Grunning, Louisiana Civil Law Treatise, Sales § 11.12 (2012). Louisiana courts have recognized that a plaintiff may prevail in an action for redhibition without proving that he notified the seller of the defect or gave the seller an opportunity to repair the thing sold. *See Aucoin v. S. Quality Homes, LLC*, 984 So. 2d 685, 691 (La. 2008) (citing Louisiana Civil Code article 2531 with favor); *Williams v. Pike*, 58 So. 3d 525, 527 (La. App. 2 Cir. 2011) (affirming the trial court's judgment in favor of the plaintiff and reasoning that a failure to give notice only prevents a plaintiff from rescinding the sale and recovering the full purchase price); *Maxwell v. Cayse*, 54 So. 3d 118, 123 (La. App. 3 Cir. 2010) (explaining that the plaintiff gave the seller "no opportunity whatsoever to repair the defects" and affirming the trial court's award in the plaintiff's favor).

Here, defendants argue that Swire's claim for redhibition must fail only because Swire did not allege that Gator was ever given notice of or an opportunity to repair the defective slings. Given the breadth of authority holding that this failure is not fatal to a redhibition claim, defendants' argument is without merit. Accordingly, in light of Swire's allegations that the defect rendered the slings absolutely useless or so inconvenient that it would not have knowingly purchased them, *see Walton Const.*, 984 So. 2d at 834, there is a reasonable possibility that Swire can prevail on his action in redhibition against Gator. *See Ross*, 344 F.3d at

462. Therefore, Gator is a properly joined defendant, and this Court lacks jurisdiction to adjudicate Swire's state-law claims.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Swire Oilfield's Motion to Remand.

New Orleans, Louisiana, this __3rd__ day of August, 2015.

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE